**ALANA L. MCMAINS**
California State Bar No. 285942
**MCMAINS LAW, APC**
185 West F St. #100-R
San Diego, California 92101
Telephone: (619) 310-5421
alana@mcmainslaw.com

Attorney for Plaintiff K.R.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.R., an individual,<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES OF AMERICA; [FIRST NAME UNKNOWN] PRYOR; ANDREW JONES; RONALD ST. CLAIR; and DOES 1 through 10, inclusive;<br><br>    Defendants. | Case No.:  4:26-cv-2195<br><br>**COMPLAINT FOR:**<br>1. **Eighth Amendment Violation;**<br>2. **Gender Violence;**<br>3. **Sexual Battery;**<br>4. **Intentional Infliction of Emotional Distress;**<br>5. **Battery;**<br>6. **Negligence;**<br>7. **Bane Act;**<br>8. **Trafficking Victims Protection Act; and**<br>9. **California Trafficking Victims Protection Act**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This action stems out of Plaintiff K.R.'s repeated sexual harassment and abuse at the hands of those entrusted with her care when she was in custody at the Federal Correctional Institution Dublin ("FCI Dublin"), an all-female prison owned and operated by Defendant the UNITED STATES OF AMERICA ("the UNITED STATES") via its agency the Federal Bureau of Prisons ("BOP").

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

2.     When she began her sentence, Plaintiff had no idea she was entering an environment so rampant with sexual abuse and corruption that guards and prisoners alike had nicknamed it "the rape club."

3.     In approximately 2020, the Federal Bureau of Investigation ("FBI") began an investigation into the constitutional and human rights abuses at FCI Dublin. Since the inception of the investigation, nine correctional officers ("COs") working for the BOP at FCI Dublin have been convicted of crimes related to the sexual abuse of the female prisoners at the facility. The investigation is ongoing.

4.     Defendants [FIRST NAME UNKNOWN] PRYOR ("PRYOR"), ANDREW JONES ("JONES"), and RONALD ST. CLAIR ("ST. CLAIR') took advantage of their positions as COs at FCI Dublin to prey on the vulnerable, incarcerated women ostensibly under their care. These COs sexually assaulted and/or harassed Plaintiff in violation of federal and state law.

5.     As a result of Defendants' actions, Plaintiff suffered numerous and substantial emotional, physical, and personal injuries that continue to affect her today, and likely will for the rest of her life.

## JURISDICTION AND VENUE

6.     Plaintiff's claims arise under the United States Constitution, the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"), and California statutory and common law. The Court has federal question jurisdiction over Plaintiff's federal claims, both constitutional and statutory, pursuant to 28 U.S.C. § 1331. Further, the Court has supplemental jurisdiction over Plaintiff's claims under California law pursuant to 28 U.S.C. § 1367 because these state-law claims arise from a common nucleus of operative fact with Plaintiff's federal claims.

7.     This Court has personal jurisdiction over Defendants. Upon information and belief, all individual Defendants are citizens of, and domiciled in, California. The Court has specific jurisdiction over Defendants because they committed the actions and commissions forming the basis for each claim against

them in California.

8.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b).  As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims occurred at FCI Dublin, located at 5701 8th St. in Dublin, California, which is within the Northern District of California.

## PARTIES

9.     Plaintiff is an individual that is a citizen and domiciled in California. She was residing in California while incarcerated at FCI Dublin at all times relevant to this action.  As a victim of sexual assault as defined by section 115.6 of the Prison Rape Elimination Act ("PREA"), she is using her initials to protect her privacy.

10.    Upon information and belief, Defendant PRYOR is an individual and citizen of California, and he has been at all times relevant to this Complaint. Upon information and belief, he remains an employee of the BOP/UNITED STATES.

11.    Defendant ST. CLAIR was an individual and citizen of California, employed by the BOP, at all time relevant to this case. Upon information and belief, he remains domiciled in California.

12.    Defendant JONES was an individual and citizen of California, employed by the BOP, at all times relevant to this case. He is currently temporarily residing in Kentucky while incarcerated at FCI Ashland due to his sexual abuse of FCI Dublin inmates.

13.    Defendant United States of America ("the UNITED STATES") is a sovereign entity that has waived its immunity for certain claims, including the claims set forth herein, and is liable for the acts of its employees and servants.

14.    The UNITED STATES owns, operates, managers, and oversees numerous prisons, including FCI Dublin.

15.    Defendant UNITED STATES, acting through its secretary, supervisory employees, employees, agents, and staffs, including those at the BOP,

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

hired individual Defendants PRYOR, JONES, and ST. CLAIR and DOES 1 through 10, inclusive, as employees.

16. While performing the acts and omissions that Plaintiff alleges in this Complaint, PRYOR, JONES, and ST. CLAIR were acting within the scope of their official employment and authority, whether actual or apparent.

17. Plaintiff is ignorant as to the true names, identities, and capacities of Defendants DOES 1 through 10, inclusive. Therefore, Plaintiff sues these Defendants via fictitious names. When the true names, identities, or capacities of such fictitiously designated Defendants are ascertained, Plaintiff will seek leave of this Court to amend the Complaint to assert their true names, identities, and capacities, as well as any specific relevant allegations.

18. Upon information and belief, Defendant DOES 1 through 10, inclusive, were COs and/or employees of the UNITED STATES. At all times relevant, these Defendants were acting within the scope of their official employment and authority, whether actual or apparent.

19. Each DOE Defendant is responsible, in some manner, for the events and occurrences delineated in this Complaint, thereby legally causing the injuries and damages to Plaintiff as will be alleged.

20. All Defendants were at all times responsive for the custody, care, control, direction, safety, and wellbeing of Plaintiff.

21. Defendants, and at all times herein mentioned, each was acting within the time, place and scope of employment of other Defendants. At all material times, all of the Defendants aided, abetted, authorized, and ratified all of the actions of all of the other Defendants. Plaintiff is informed and believes, and based thereupon alleges, that at all material times, Defendants, and each of them, were the agents, employees, managing agents, supervisors, coconspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting within the course and

4
COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

scope of said agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants. Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly and severally.

### THE PRISON RAPE ELIMINATION ACT

22.    Recognizing the severe problem of rape and sexual assault within correctional institutions, Congress passed the PREA in 2003.  *See* 34 U.S.C. § 30301, *et seq.*   The statute created the National Prison Rape Elimination Commission, which was tasked with establishing national standards for preventing and responding to sexual abuse of inmates.  These standards became effective in August of 2012 and were published in the Federal Register.

23.    PREA regulations are mandatory for all employees of the BOP.  The PREA required the BOP to create and maintain a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment outlining [the BOP's] approach to preventing, detecting, and responding to such conduct. Periodic audits of all federal correctional facilities is required in order to ensure compliance with the standards put forth in the regulations.

24.    The PREA requires that all staff "report immediately" and "knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in the facility," as well as any "retaliation against inmates or staff who reported such an incident," as well as any "staff neglect or violation of responsibilities that may have contributed to an incident or regulation." 28 C.F.R. § 115.61. "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions." *Id.* § 115.61(b).

25.    It further mandates that prison officials assess whether a prison inmate is subject to a substantial risk of imminent sexual abuse, and if it is determined that the substantial risk exists, the prison must take immediate action to protect the inmate. *Id.* § 115.62.

26.    Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator and conduct an administrative or criminal investigation. *Id.* §§ 115.61(e); 115.222(a). A criminal investigation is required for all allegations of inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior." *Id.* § 115.222(b). All such referrals must be documented. *Id.*

27.    Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation." *Id.* § 115.67(a). A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after a report of abuse is filed to ensure that he or she is not retaliated against by prison staff. *Id.* § 115.67(a); BOP Program Statement No 5324.11, at 44 (Jan. 6, 2014).

28.    Pursuant to the PREA, all employees of the BOP that have contact with inmates must be trained on the following items: (1) zero-tolerance policy for sexual abuse and sexual harassment; (2) responsibilities regarding detection, reporting, and responding to sexual abuse; (3) inmates' right to be free from sexual abuse and sexual harassment; (4) inmates' and employees' rights to be free from retaliation for reporting sexual abuse or harassment; (5) the dynamics of sexual abuse and sexual harassment in confinement; (6) the common reactions of sexual abuse/assault victims; (7) how to detect and respond to signs of threatened and actual sexual abuse; and (8) how to avoid inappropriate relationships or situations

with inmates. *See* 28 C.F.R. § 115.31.

29. The statute states that presumptive disciplinary sanction for staff that sexually abuses inmates is termination of employment; some form of discipline is required. *Id.* § 115.76.

30. All documentation relating to an allegation of inmate sexual abuse must be maintained and securely retained for at least ten years after the date of initial collection. *Id.* §§ 115.87(a), (d); 115.89(a), (d).

31. The PREA also requires the BOP to offer medical and mental health care to all sexual abuse victims. *Id.* § 115.83.

### THE CULTURE OF SEXUAL ABUSE AT FCI Dublin

32. Based on information and belief, throughout the last three decades, the UNITED STATES has repeatedly ignored incidents of sexual misconduct at FCI Dublin.
Despite the long-established requirements of the PREA, personnel at FCI Dublin engaged for years in a pattern and practice of engaging in sexual abuse of inmates and then covering it up.

33. FCI Dublin had an institutional culture of defiance of the PREA. COs regularly turned a blind eye towards rampant sexual assault and abuse of female inmates. The culture prioritized loyalty to fellow COs over the duty under the PREA to prevent sexual assault and assist victims. Inmates who spoke out were regularly retaliated against, also in violation of the PREA.

34. This culture was became entrenched during the period between December 2018 and November 2020, when Ray J. Garcia was the associate warden at FCI Dublin.

35. As the warden, Garcia was responsible for the safekeeping, care, protection, discipline, programming, health, employment, and release of inmates incarcerated at FCI Dublin. Garcia was also responsible for hiring, training, supervising, and managing staff. He had disciplinary authority over all employees

working at FCI Dublin as well as all inmates incarcerated there. Garcia was further in charge of determining, enacting, and employing operating procedures and policies for FCI Dublin. Crucially, Garcia was in charge of ensuring PREA compliance and conducting the annual PREA audit.

36. Garcia failed to comply with the PREA throughout his tenure at FCI Dublin. He failed provide sufficient or effective training to the COs, staff, and independent contractors working with female inmates. He further failed to conduct adequate and accurate audits of the facility, because he was very aware that he himself, along with many others working at FCI Dublin, was personally engaging in sexual abuse of the incarcerated women. Garcia also, as part of his purposeful coverup of the epidemic of sexual abuse at the prison, failed to properly respond to or investigate complaints and/or allegations of sexual assault that he received as warden.

37. Garcia sexually assaulted multiple women under his care. He groped women, forced them to pose nude, and verbally degraded them. Garcia even continued to sexually harass women once they had been sent to BOP-controlled halfway houses, sending pictures of his penis to one. He intentionally used his power as warden to take advantage of his victims, promising them preferential treatment if they complied with his demands.

38. In September of 2021, Garcia was indicted for multiple counts of federal felony sexual abuse of a ward, based on sexually assaulting inmates and having naked photographs of inmates on his government-issued cell phone. He was convicted by a jury trial in March of 2023. When sentencing him to 70 months, the U.S. District Judge Yvonne Gonzalez Rogers declared that FCI Dublin was a "cesspool" and that Garcia not only "did nothing about it," but actually "went along with the ride and enjoyed the cesspool [him]self."

39. Garcia's sexual misconduct was known to others at FCI Dublin, and it set an example that COs and other staff could get away with abusing the inmates.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Garcia modeled poor behavior, and he intentionally ignored other employees' acts of sexual abuse that he either knew of or should have known about. Individuals working at FCI Dublin knew, through observing Garcia's conduct, that sexual abuse of women was acceptable and would not be punished. Thus, Garcia ratified the illegal conduct of his inferior officers.

40. In addition to Garcia, least eight other BOP employees have been convicted of charges related to their sexual abuse of female inmates at FCI Dublin. While the investigation remains ongoing, the following individuals have been charged:

(a) Defendant JONES pleaded guilty in August of 2023 and was sentenced to 96 months prison;

(b) CO Ross Klinger pleaded guilty to sexual abuse of a ward in February of 2022 and was sentenced to time served;

(c) Chaplain James Highhouse pleaded guilty in February of 2022 and was sentenced to 84 months custody;

(d) CO Enrique Chavez pleaded guilty in October of 2022 and was sentenced to 20 months prison;

(e) CO John Bellhouse was convicted by a jury in June of 2023 and sentenced to 63 months prison;

(f) CO Nakie Nunley pleaded guilty in July of 2023 and was sentenced to 72 months prison;

(g) CO Jeffrey Wilson pleaded guilty in August of 2025 and faces sentencing in March of 2026; and

(h) CO Lawrence Gacad pleaded guilty in August of 2025 and was sentenced to 5 years probation.

41. Upon information and belief, many more COs, staff, and contractors engaged in sexual abuse of women, even though they have not been indicted or convicted.

42.     Despite the FBI investigation and the removal of many COs accused of sexual abuse, predators remained at FCI Dublin. As a result of the many COs getting arrested, placed on leave, or transferred, the remaining COs were resentful and angry toward the women who they believed "snitched" on their coworkers. The COs began engaging in retaliatory behavior against the women, including but not limited to locking women in special housing units for solitary confinement, transferring them away from their families, giving them disciplinary "shots" that affected their good time credits, and conducting random, baseless searches during which they would violently tear up the women's property.

43.     As the scandal gained more media attention, U.S. Senate conducted a bipartisan investigation into sexual abuse of female prisoners in BOP custody.  In December of 2022, the U.S. Senate Permanent Committee on Investigations, Committee on Homeland Security and Government Affairs released their final report.

44.     The United States Senate's bipartisan investigation into sexual abuse of female prisoners in BOP custody found that BOP employees have sexually abused female prisoners in at least two-thirds of facilities that have held women over the last decade.[1]   It additionally noted that BOP management failures and seriously flawed investigative practices are both to blame for this terrible failure to successfully implement PREA.[2]   The BOP also failed to hold employees accountable for their misconduct, with "a backlog of approximately 8,000 internal affairs cases alleging employee misconduct, some of which have been pending for

---

[1] U.S. Senate Permanent Subcommittee on Investigations, *Sexual Abuse of Female Inmates in Federal Prisons*, at 4 (Dec. 13, 2022), https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf [hereinafter, Senate Report], at 1.

[2] *Id.*

more than five years."[3]

45.     The report also pointed out the inadequacy of the PREA audits in detecting or preventing sexual assaults of inmates.  It noted that FCI Dublin's PREA audits all came back clean, despite the known sexual misconduct that the guards were engaging in during that time period.  It asserted that FCI Dublin had a recurring problem of sexual abuse of female prisoners, and that there was evidence that problem had been ongoing since the 1990s.  It concluded that the BOP had failed to take agency-wide action to address the problem.

46.     In August of 2023, a class action lawsuit was filed against the BOP and FCI Dublin officials. *See California Coalition for Women's Prisoners et al. v. United States et al.*, No. 4:23-cv-4155-YGR (N.D. Cal.). A Special Master was appointed to oversee FCI Dublin.

47.     Shortly thereafter, in April of 2024, the BOP shut down FCI Dublin. *See id.* (ECF No. 300, at 1). Then-Director of the BOP Colette S. Peters acknowledged that the facility was "not meeting expected standards" despite the fact that the BOP had taken "unprecedented steps and provided a tremendous amount to address culture, recruitment and retention, aging infrastructure – and most critical – employee misconduct."[4]

48.     On June 5, 2024, the Special Master issued her first report regarding FCI Dublin, finding that it had "a cascade of failure in critical institutional systems and areas."[5]  The report, among other things, highlighted the prison's significant problems with inadequate mental health treatment, discipline and due process, and

---

[3] *Id.* at 4.

[4] Lisa Fernandez, *FCI Dublin Closing, Women Transferred to Prisons Across U.S.*, KUTV (Apr. 16, 2024), https://www.ktvu.com/news/fci-dublin-closing-women-transferred-elsewhere.

[5] Wendy Still, First Report of the Special Master Pursuant to the Court's Order of March 26, 2024 (Jun. 5, 2024), at 28; https://s3.documentcloud.org/documents/25030691/fci-dublin-special-master-report.pdf

inadequate PREA protocol.[6] The Special Master stated that it was "unconscionable that any correctional agency could allow incarcerated individuals under their control and responsibility to be subject to the conditions that existed at FCI-Dublin for such an extended period of time without correction."[7]

## THE SEXUAL ABUSE AND HARASSMENT OF PLAINTIFF BY PRYOR, JONES, AND ST. CLAIR

49.    Plaintiff was incarcerated at FCI Dublin between approximately July of 2021 and February of 2025.

50.    As soon as she arrived at FCI Dublin, Plaintiff realized the environment was rife with cruelty, sexual misconduct, and corruption.

51.    Frequently, the COs would make sexual comments to women, inquiring and speculating about their sex lives, or assessing and praising their bodies.  COs would walk in on women while they were in the shower and leer at their naked bodies, just to show that they could.  COs would enter women's cells without any reasonable suspicion and conduct pat-downs and strip searches, under the pretext of a minor infraction.

52.    The COs were frequently degrading to the women, verbally abusing them.  It was not uncommon for the COs to fly into a fit of rage and destroy the women's property.

53.    Further, many of the COs had sexual contact with women at the prison. Plaintiff would see officers who repeatedly pulled the same woman out of her cell and took her to a private room. Inmates would openly discuss sexual and romantic relationships between the women and COs. They would also warn each other about which guards were particularly lecherous and abusive.

54.    Because these actions were well known to all the inmates at FCI

---

[6] *Id.*
[7] *Id.* at 13.

Dublin, they lived in a daily atmosphere of fear. Though some women reported what happened, their complaints would be ignored. Other women did not even attempt to complain, as the COs had threatened them and warned them that nobody would believe the word of an inmate against a guard.

55.    PRYOR's harassment of Plaintiff began immediately, when she was quarantined for three weeks upon her arrival to FCI Dublin. It continued for the entirety of her incarceration.

56.    PRYOR began coming by Plaintiff's cell anytime her roommate wasn't there, and he would tell her to show him her breasts. Plaintiff, not wanting to get in trouble with a CO, complied and pulled up her shirt to show him her bare chest.

57.    PRYOR began asking for more and more from Plaintiff. Once, he stuck a finger through the bars and asked her to suck on it. She felt uncomfortable but she agreed; PRYOR then told her he had gotten a "boner" watching her.

58.    PRYOR would flash his light through the window into her room to watch her changing. Sometimes, he would wake her up and say, "Let me see something," and then Plaintiff would follow his orders by pulling up her shirt or pulling down her pants.

59.    PYROR made many sexual comments about Plaintiff's sex life. Once, he asked her to bend over and masturbate for him. Plaintiff refused, but he kept pushing. She gave an excuse that she had not shaved her pubic area recently, because she did not want to make him angry. PRYOR kept saying, "Come on, come on," as Plaintiff tried to decline politely. Finally, Plaintiff's roommate returned, which finally deterred PRYOR.

60.    PYROR's harassment of Plaintiff was so blatant that other inmates would joke that he was her "boyfriend."

61.    PRYOR once asked her who was going to pick her up when she got out of custody. He offered to do it, telling her he would pay her for sex.

62. Plaintiff also experienced sexual harassment while she was working in the kitchen in approximately 2022.

63. JONES and ST. CLAIR worked as her supervisors in the kitchen, and they regularly made inappropriate sexual comments to Plaintiff, discussing the sexual attributes of various other kitchen employees.

64. JONES and ST. CLAIR would regularly bribe Plaintiff with sugar, meat, and coffee so that she would work as a "lookout" for them while they had sex with female inmates. They would order her to stand outside the staff lounge and knock if somebody came in order to warn them.

65. Many COs retaliated against Plaintiff and the other victims of sexual assault at FCI Dublin. On one occasion, CO Nicholas Ramos confiscated all the bras of the women in Plaintiff's unit in order to punish them and intimidate them into silence about the ongoing abuse.

66. Plaintiff was released from FCI Dublin on approximately February 16, 2024.

67. To try and reconnect with friends after her incarceration, Plaintiff posted her new phone number on Facebook. One night, she received a text message from an unknown number, When she asked who it was, she got the response "P."

68. Plaintiff immediately suspected that it was PRYOR. PRYOR began making sexual comments to her, discussing his desire to have unprotected anal sex with her.

69. To see if it was really PRYOR, Plaintiff called the number. She recognized PRYOR's voice when he answered, but she still asked if it was him. PRYOR confirmed his identity. Plaintiff, feeling frightened and awkward, hung up.

70. PYROR continued texting her, trying to meet up with her.

71. One night, Plaintiff told PRYOR she would meet with him, but she did not actually respond to any more of his texts. PRYOR sent increasingly angry messages, stating that he had driven for hours to try and meet her in Lompoc.

Plaintiff was frightened, as she believed he might have used her BOP records to obtain her home address.

72. Plaintiff's last interaction with PRYOR was in approximately May of 2024.

73. Plaintiff has struggled with severe symptoms of depression, anxiety, and PTSD since her abuse at FCI Dublin, including suffering relapses into substance use disorder.

74. Plaintiff has had her supervised release revoked as a result of her ongoing struggles with substance use, and as such, as returned to BOP custody.

75. While incarcerated at other BOP facilities, Plaintiff faced retaliation and discrimination for being a "Dublin girl." Other BOP employees called her a "whore" and accused her of having sex with guards.

## FTCA ADMINISTRATIVE EXHAUSTION

76. This action is, at least in part, brought pursuant to the FTCA, which provides that a tort claim against the UNITED STATES will be forever barred "unless it is presented in writing to appropriate Federal agency within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

77. Plaintiff has administratively exhausted all her claims against the UNITED STATES as required by the FTCA.

78. Plaintiff submitted her "Claim for Damage, Injury, or Death" to the UNITED STATES on February 19, 2025. The Claim was in the amount of $5,000,000.

79. The BOP acknowledged receipt of Plaintiff's claims on March 7, 2025.

80. Under the FTCA, if a federal agency fails to issue a final disposition on a claim within six months, a plaintiff may consider this a final denial of her claim. *Id.* § 2675(a).

81. The BOP has neither accepted or denied Plaintiff's claim and over six months have passed. Thus, Plaintiff considers this a final denial of her claim such that she may bring her claim in this Court.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

## *BIVENS* CLAIM — VIOLATION OF THE EIGHTH AMENDMENT

## CRUEL AND UNUSUAL PUNISHMENT

## SEXUAL ABUSE, DELIBERATE INDIFFERENCE TO PLAINTIFF'S

## SAFETY, AND FAILURE TO PROTECT

## U.S. Const. Amdt. VIII

## (Against Defendants PRYOR, JONES, ST. CLAIR, and DOES 1–10, inclusive)

82. Plaintiff incorporates by reference all previous paragraphs as if fully stated herein.

83. This constitutional claim is brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

84. The Eighth Amendment of the United States Constitution guarantees Plaintiff the right to be free from cruel and unusual punishment. Sexual abuse of a prisoner constitutes cruel and unusual punishment in violation of the Eighth Amendment, as it serves no legitimate penological purpose.

85. Federal law recognizes that an inmate cannot legally consent to sexual contact, harassment, or abuse from a prison guard. This is because the power difference between inmates and guards is so extreme that it negates any ability to consent. Even sexual contact that would be considered consensual in other circumstances is not consensual in the context of an inmate. Plaintiff did not consent to any of the sexual contact or verbal harassment between her and PRYOR, JONES, or ST. CLAIR.

86. The actions of PRYOR, JONES, and ST. CLAIR deprived Plaintiff of

16
COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

her Eighth Amendment rights.

87. The UNITED STATES failed to supervise and train FCI Dublin COs to prevent sexual abuse, despite being aware of the "rape club" culture at the prison. Garcia and other supervisory employees ratified the conduct of PRYOR, JONES, ST. CLAIR, and other COs engaged in sexual abuse of inmates by personally participating in the same conduct. The UNITED STATES also failed to comply with its duties under the PREA to help detect and prevent sexual abuse.

88. Defendants' actions and omissions created a substantial risk of serious harm to female inmates like Plaintiff. Due to their PREA training, Defendants were aware of that substantial risk, and yet they failed to take reasonable measures to abate the risk. In fact, they were deliberately indifferent to that risk by consciously choosing to disregard their duties under federal law.

89. PRYOR, JONES, and ST. CLAIR violated Plaintiff's right to be free from cruel and unusual punishment when they made nonconsensual, offensive sexual contact with Plaintiff and/or engaged in sexual harassment for their own sexual gratification and for the purpose of humiliating, degrading, or demeaning Plaintiff. At the time, she was an incarcerated inmate at FCI Dublin and they were COs with substantial power over her, thus the sexual abuse occurred under coercive circumstances.

90. By intentionally subjecting Plaintiff to sexual assault and/or harassment, PRYOR, JONES, and ST. CLAIR acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

91. PRYOR, JONES, and ST. CLAIR acted under color of federal law, in that they were acting or purporting to act in the performance of their official duties as BOP employees.

92. Plaintiff lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy; thus, an appropriate remedy, namely damages, can be imposed by this Court.

93.    As a direct and legal result of the aforementioned acts and omissions of the Defendants, Plaintiff has suffered great physical pain, mental pain and suffering, emotional distress, past and future costs of medical care and treatment, and other economic and non-economic damages in an amount not yet ascertained.

94.    Plaintiff also asserts this claim against DOES 1 through 10, inclusive.

95.    The conduct of PRYOR, JONES, and ST. CLAIR and DOES 1 through 10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff.  It therefore warrants the imposition of exemplary and punitive damages against them.

## SECOND CAUSE OF ACTION

### GENDER VIOLENCE

### Cal. Civ. Code § 52.4

### (Against Defendant PRYOR and DOES 1–10, inclusive)

96.    Plaintiff incorporates by reference all previous paragraphs as if fully stated herein.

97.    At all relevant times mentioned in this Complaint, California Civil Code § 52.4 was in full force and effect and was binding on PRYOR. Under that statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

98.    PRYOR committed a physical intrusion and/or physical invasion of a sexual nature against Plaintiff under coercive conditions.  Specifically, he forced her to show him her naked breasts, buttocks, and other body parts. He further penetrated her mouth with his finger and required her to suck on it, for his own sexual gratification.

99.    PRYOR also committed against Plaintiff a criminal offense that has an element of the use, attempted use, or threatened use of physical force against the

person of another.

100.  PRYOR committed these acts against Plaintiff at least in part because of her gender.

101.  PRYOR's acts were not discretionary or a policy judgment, as he knew such conduct was prohibited by the PREA, BOP policies, and state and federal law.

102.  As a direct and legal result of the aforementioned acts and omissions of PRYOR, Plaintiff has suffered great physical pain, mental pain and suffering, emotional distress, past and future costs of medical care and treatment, and other economic and non-economic damages in an amount not yet ascertained.

103.  Plaintiff also asserts this claim against DOES 1 through 10, inclusive

104.  The conduct of PRYOR and DOES 1 through 10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff.  It therefore warrants the imposition of exemplary and punitive damages against them.

105.  Plaintiff further seeks attorneys' fees and costs, as expressly authorized by the statute.

### THIRD CAUSE OF ACTION

**SEXUAL BATTERY**

**FTCA; Cal. Civ. Code § 1708.5**

**(Against All Defendants)**

106.  Plaintiff incorporates by reference all previous paragraphs as if fully stated herein.

107.  Plaintiff brings this claim for sexual assault under FTCA and California Civil Code § 1708.5 against the UNITED STATES and PRYOR. The UNITED STATES ratified the conduct of PRYOR. Pursuant to 28 U.S.C. § 1346(b), the UNITED STATES is liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would liable to the

Plaintiff in accordance with the law of the place where the act or the omission occurred." Thus, under the FTCA, Defendant the UNITED STATES is responsible for the conduct of Defendant PRYOR.

108. PRYOR acted with the intent to cause a harmful or offensive contact with Plaintiff; and a sexually offensive contact resulted.

109. PRYOR also acted with intent to cause an imminent apprehension of sexual assault and sexually offensive contact with Plaintiff resulted.

110. PRYOR's offensive contact would offend a reasonable sense of personal dignity and lacked any penological justification.

111. PRYOR's acts were not discretionary or a policy judgment, as he knew such conduct was prohibited by the PREA, BOP policies, and state and federal law.

112. As a direct and legal result of the aforementioned acts and omissions of PRYOR, Plaintiff has suffered great physical pain, mental pain and suffering, emotional distress, past and future costs of medical care and treatment, and other economic and non-economic damages in an amount not yet ascertained.

113. These allegations are also asserted against DOES 1–10, inclusive.

114. The conduct of PRYOR and DOES 1 through 10, inclusive, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff. It therefore warrants the imposition of exemplary and punitive damages against them.

115. This action arises out of the commission of a felony. Plaintiff is therefore entitled to reasonable attorneys' fees incurred in prosecuting this action pursuant to Cal. Code of Civil Procedure § 1021.4, according to proof.

**FOURTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**FTCA; California Common Law**

**(Against All Defendants)**

116. Plaintiff incorporates by reference all previous paragraphs as if fully

stated herein.

117. Plaintiff brings this claim for intentional infliction of emotional distress under FTCA and California common law against the UNITED STATES and PRYOR, JONES, and ST. CLAIR. The UNITED STATES ratified the conduct of PRYOR, JONES, and ST. CLAIR. Pursuant to 28 U.S.C. § 1346(b), the UNITED STATES is liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would liable to the Plaintiff in accordance with the law of the place where the act or the omission occurred." Thus, under the FTCA, Defendant the UNITED STATES is responsible for the conduct of Defendants PRYOR, JONES, and ST. CLAIR.

118. PRYOR, JONES, and ST. CLAIR engaged in willful misconduct that was outrageous and offensive.

119. PRYOR, JONES, and ST. CLAIR intended to cause and/or acted with reckless disregard of causing severe emotional distress to Plaintiff.

120. As a direct and legal result of the aforementioned willful misconduct of PRYOR, JONES, and ST. CLAIR, Plaintiff was caused to suffer, and did in fact suffer, severe and extreme emotional distress, as well as past and future costs of medical care and treatment, and other economic and non-economic damages in an amount not yet ascertained.

121. Plaintiff also brings this claim against DOES 1 through 10, inclusive.

122. The conduct of PRYOR, JONES, and ST. CLAIR and DOES 1 through 10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff. It therefore warrants the imposition of exemplary and punitive damages against them.

123. This action arises out of the commission of a felony. Plaintiff is therefore entitled to reasonable attorneys' fees incurred in prosecuting this action

pursuant to Cal. Code of Civil Procedure § 1021.4, according to proof.

## FIFTH CAUSE OF ACTION

### BATTERY

### FTCA; California Common Law

### (Against All Defendants)

124.   Plaintiff incorporates by reference all previous paragraphs as if fully stated herein.

125.   Plaintiff brings this claim for intentional infliction of emotional distress under FTCA and California common law against the UNITED STATES and PRYOR. The UNITED STATES ratified the conduct of PRYOR. Pursuant to 28 U.S.C. § 1346(b), the UNITED STATES is liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would liable to the Plaintiff in accordance with the law of the place where the act or the omission occurred." Thus, under the FTCA, Defendant the UNITED STATES is responsible for the conduct of Defendant PRYOR.

126.   PRYOR touched Plaintiff and/or caused Plaintiff to be touched with the intent to harm or offend her by sexually abusing while she was incarcerated at FCI Dublin.

127.   Plaintiff did not consent to the touching.  As an inmate at a correctional facility, she could not legally consent.  The touching had no legitimate penological purpose.

128.   Plaintiff was harmed and offended by PRYOR's conduct, and a reasonable person in Plaintiff's situation would also have been offended by the touching.

129.   As a direct and legal result of the aforementioned acts and omissions of PRYOR, Plaintiff has suffered great physical pain, mental pain and suffering,

emotional distress, past and future costs of medical care and treatment, and other economic and non-economic damages in an amount not yet ascertained.

130.   Plaintiff also asserts this claim against DOES 1 through 10, inclusive.

131.   The conduct of PRYOR and DOES 1 through 10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff.  It therefore warrants the imposition of exemplary and punitive damages against them.

132.   This action arises out of the commission of a felony.  Plaintiff is therefore entitled to reasonable attorneys' fees incurred in prosecuting this action pursuant to Cal. Code of Civil Procedure § 1021.4, according to proof.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE

### FTCA; California Common Law

### (Against All Defendants)

133.   Plaintiff incorporates by reference all previous paragraphs as if fully stated herein.

134.   Plaintiff brings this claim against the UNITED STATES, PRYOR, and DOES 1–10 under the FTCA and California common law based on the actions and/or omissions of UNITED STATES, PRYOR, JONES, and ST. CLAIR, and DOES 1–10 taken while working at FCI Dublin in their capacities as employees of the BOP and acting within the scope of their employment, with the permission and consent of the UNITED STATES.

135.   Pursuant to 28 U.S.C. § 1346(b), the UNITED STATES is liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would liable to the Plaintiff in accordance with the law of the place where the act or the omission occurred." Thus, under the FTCA, Defendant the UNITED STATES is responsible for the conduct of Defendants

PRYOR, JONES, and ST. CLAIR.

136. Because she was an inmate at a federal prison run by the BOP, Plaintiff was at all relevant times in the custody and care of the UNITED STATES.

137. Because of the special relationship between a jailer and prisoner, the UNITED STATES, including its employees PRYOR, JONES, and ST. CLAIR and DOES 1–10, inclusive, had a general duty and common law duty of care under California law to protect Plaintiff from foreseeable harm, including but not limited to sexual assault, harassment, and abuse.

138. Sexual assault, harassment, and abuse of female inmate by male COs was a foreseeable harm of which the UNITED STATES was aware.  The BOP was specifically aware of the risk to female inmates based not only on the PREA, but on its knowledge of prior incidents of sexual assault of female inmates in the 1990s and 2000s. California negligence law does not require the UNITED STATES to have had actual knowledge of the abuse of Plaintiff by PRYOR, JONES, and ST. CLAIR, but nevertheless, the UNITED STATES knew or should have known of what PRYOR, JONES, and ST. CLAIR were doing because of the widespread prison rumors about them and multiple female inmates, as well as their flagrant behavior in making sexual comments to Plaintiff and visiting her cell without penological justification. The sexual abuse and harassment of Plaintiff by PRYOR, JONES, and ST. CLAIR was reasonably foreseeable to the UNITED STATES because their conduct made it obvious they were sexually abusing and/or harassing Plaintiff.

139. The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

140. Further, Defendants had additional mandatory statutory duties of care to Plaintiff based on PREA regulations and BOP policy to protect Plaintiff from the

known risk of sexual assault, harassment, and abuse. These duties required it to provide proper training and supervision of COs and to properly investigate allegations of sexual abuse.

141. The UNITED STATES breached these duties in a variety of ways. It failed to supervised and operated FCI Dublin in a manner that would have prevented the ongoing sexual abuse and harassment of Plaintiff by PRYOR, JONES, and ST. CLAIR. The UNITED STATES did not take reasonable, available measures to abate the risk of abuse to Plaintiff and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

142. The BOP as an agency failed to properly monitor, assess, and address its widespread problem with female inmates being sexual assaulted, especially at prisons with recurring issues like FCI Dublin. It failed to sufficiently train supervisory FCI Dublin employees such as those who supervised PRYOR, JONES, and ST. CLAIR. It also lacked an effective system for checking to ensure the validity of PREA audits, instead allowing an abusive warden to falsify his report for multiple years, without any knowledge of the BOP. It further failed to provide sufficient security measures at FCI Dublin, including but not limited to adequate security camera coverage to eliminate unmonitored areas that provided a safe haven for perpetrators. The BOP also failed to take adequate steps to address complaints of misconduct, resulting in a backlog of thousands of complaints, and it failed to sufficiently analyze those complaints in order to detect patterns of misconduct by prisons or officers. It failed to properly screen potential employees, failing to research the backgrounds, histories, qualifications, and competence of COs that were hired. And the BOP further failed to properly discipline and terminate COs who engaged in misconduct and retaliation against those who spoke out against misconduct. Instead, it made reckless and dangerous decisions to transfer those

COs to a new unit or even new prison—thus giving them the opportunity to find a new set of victims.

143. The sexual abuse and harassment of Plaintiff by PRYOR, JONES, and ST. CLAIR occurred as the direct and proximate result of the supervisory negligence of the UNITED STATES and DOES 1–10.

144. As a direct and legal result of the aforementioned negligence of the UNITED STATES, PRYOR, JONES, and ST. CLAIR and DOES 1–10, Plaintiff was caused to suffer, and did in fact suffer, severe and extreme emotional distress, as well as past and future costs of medical care and treatment, and other economic and non-economic damages in an amount not yet ascertained.

**SEVENTH CAUSE OF ACTION**

**BANE ACT**

**FTCA; Cal. Civ. Code § 52.1**

**(Against All Defendants)**

145. Plaintiff incorporates by reference all previous paragraphs as if fully stated herein.

146. Pursuant to 28 U.S.C. § 1346(b), the UNITED STATES is liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would liable to the Plaintiff in accordance with the law of the place where the act or the omission occurred." Thus, under the FTCA, Defendant the UNITED STATES is responsible for the conduct of Defendants PRYOR, JONES, and ST. CLAIR.

147. Under Cal. Civil Code §52.1, it is a civil rights violation for any person to interfere with the exercise or enjoyment by an individual of her rights secured by the U.S. Constitution or state or federal law. This includes any interference with these rights by threats, intimidation, coercion, or attempted threats, intimidation, or

coercion.

148. PRYOR, JONES, and ST. CLAIR interfered with Plaintiff's rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment. He interfered with these rights by threat, intimidation, and/or coercion.

149. Plaintiff also brings this claim against DOES 1–10, inclusive.

150. As a direct and legal result of the aforementioned conduct of PRYOR, JONES, and ST. CLAIR, Plaintiff was caused to suffer, and did in fact suffer, severe and extreme emotional distress, as well as past and future costs of medical care and treatment, and other economic and non-economic damages in an amount not yet ascertained.

151. Further, Plaintiff is entitled to the statutory civil penalties and attorneys' fees and costs as set forth in § 52.1.

**EIGHTH CAUSE OF ACTION**

**TRAFFICKING VICTIMS PROTECTION ACT**

**18 U.S.C. § 1581,** *et seq.*

**(Against Defendants the UNITED STATES, PRYOR, and DOES 1 – 10, inclusive)**

152. Plaintiff incorporates by reference all previous paragraphs as if fully stated herein.

153. Defendant PRYOR knowingly recruited, enticed, and solicited Plaintiff by offering benefits and things of value, such as not being subjected to discipline, for remaining silent while he engaged in sexual abuse of her and other women.

154. Defendant PRYOR sexually abused Plaintiff through force and/or

coercion.

155.   Plaintiff also brings this claim against DOES 1–10, inclusive.

156.   As a direct and legal result of the aforementioned acts and omissions of Defendants, Plaintiff has suffered great physical pain, mental pain and suffering, emotional distress, past and future costs of medical care and treatment, and other economic and non-economic damages in an amount not yet ascertained. She thus has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

### NINTH CLAIM FOR RELIEF

### CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT

### FTCA; Cal. Civ. Code § 52.5

157.   (Against Defendants the UNITED STATES, PRYOR, and DOES 1 – 10, inclusive)

158.   Plaintiff incorporates by reference all previous paragraphs as if fully stated herein.

159.   Pursuant to 28 U.S.C. § 1346(b), the UNITED STATES is liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would liable to the Plaintiff in accordance with the law of the place where the act or the omission occurred." Thus, under the FTCA, Defendant the UNITED STATES is responsible for the conduct of Defendant PRYOR.

160.   Defendant PRYOR knowingly recruited, enticed, and solicited Plaintiff by offering benefits and things of value, such as not being subjected to discipline, for remaining silent while he engaged in sexual abuse of her.

161.   Defendant PRYOR sexually abused Plaintiff through force and/or coercion.

162.   Plaintiff also brings this claim against DOES 1–10, inclusive.

163.   As a direct and legal result of the aforementioned acts and omissions of Defendants, Plaintiff has suffered great physical pain, mental pain and suffering, emotional distress, past and future costs of medical care and treatment, and other economic and non-economic damages in an amount not yet ascertained.

## PRAYER FOR RELIEF

Plaintiff K.R. prays for judgment as follows:

1) For compensatory, general, and special damages, including past, present, and future damages, in an amount in accordance to proof;

2) For punitive damages as permitted by law;

3) For reasonable costs, attorneys' fees, and litigation expenses, including expert witness fees, as permitted by law; and

4) For any other relief that is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

Date: March 13, 2026

/s/ *Alana L. McMains*
**Alana L. McMains**
**MCMAINS LAW, APC**
Attorney for Plaintiff